# Garrigues *versus* Harris.

1. In the investigation of a question of *fraud,* courts should be liberal in the receipt of evidence *tending to* disclose the true nature of the transaction.

2. The order of time in the admission of evidence is discretionary with the court below : this Court will not therefore reverse because a deed was read in evidence without proof by a subscribing witness, if it was afterwards proved by him.

3. It was not a valid objection to deeds between other persons than

[Garrigues *v.* Harris.]

defendant, which were offered in evidence, that they were *isolated,* if the defendant, sought to be affected by their exhibition, claimed *under them :* they were properly admissible in connection with proof that the title claimed by defendant was paid for by the conveyance of the land conveyed by the deeds.

4. An auditor's report, confirmed, making distribution of the proceeds of a sheriff's sale of the land in dispute, when it was purchased by the plaintiff, is evidence against the defendant, to show that defendant claimed a part of the proceeds under a judgment against the person as whose estate it was sold. Though not *conclusive* against defendant, whose claim was decided against by the auditor, it was an admission on his part that the said person had *some* interest in the land.

5. The records of the court trying a cause are legally in the custody of the court; and they may have them brought into court to be used in evidence. Records of another of the county courts, brought into court by a tipstaff, but proved by the clerk who had them in custody, the prothonotary being dead, are not to be rejected because not certified, or brought into court by the proper officer.

6. A mortgage by one to the defendant in the ejectment, in which it was recited that the mortgaged premises were the same that the person, under whom the defendant claims, had conveyed to the mortgagor, was evidence if it formed an item of evidence to show a fraudulent combination between the grantor of the premises and the defendant, even though not accompanied or followed by evidence tending to show that it was given for the *purchase-money* of the land thus conveyed to the mortgagor.

7. The record of a mortgage of land in New Jersey, though but an abstract of the mortgage, the said record being according to the laws of New Jersey, is competent evidence in Pennsylvania when authenticated according to the Act of Congress.

ERROR to the District Court, *Philadelphia.*

This was an ejectment in the court below, to recover a lot of ground at the corner of Coates and Tenth street, in the county of Philadelphia, brought by Nicholas Harris against Edward B. Garrigues and others, and defended by Quervelle, who claimed to be the owner of the lot.    The plaintiff below claimed to have become the purchaser of the lot at a sheriff's sale on the 1st of January, 1849, as the property of *Maurice Riatt.*    To support his claim, the plaintiff gave in evidence a duly certified copy of the record of a transcript of a judgment filed in the Common Pleas of Philadelphia county to June Term, 1849, in which Harris was plaintiff, and Riatt defendant, for the sum of $72.80, by which record it also appeared that the right, title, and interest of Maurice Riatt, in the premises in dispute having been levied upon under said judgment, were sold under a *venditioni exponas* issued December the 8th, 1848, to Nicholas Harris, on the 1st of January, 1849. On the part of Harris, the plaintiff below, and defendant in error, it was alleged that the claim of Harris, derived through the sale and sheriff's deed, was based upon the allegation that Maurice Riatt, who at one time was a man of great fortune, and owning large tracts of land in the states of New Jersey and Pennsylvania, and several houses and lots in the city and county of Philadelphia and elsewhere, procured the plaintiff to enter into bonds with him

[Garrigues *v.* Harris.]

as co-security for the faithful performance of the trust of Charles Parmentier, assignee, &c., in the sum of about $10,000. That so soon as it was ascertained that the said assignee had made default, and he was likely to be called upon for the payment of the deficiency, it was discovered that he was largely indebted to others, in a sum not less than $18,000, as appears by the records of the county, and other evidences offered before the court.

That to defeat the recovery of these claims against him, he disposed of all his real estate, and conveyed it directly or indirectly to his father-in-law, Anthony G. Quervelle, the landlord of the present plaintiff in error, and who alone defended the suit.

The claim of the plaintiff was therefore founded :—

1. On the ground that Maurice Riatt had caused this property to be conveyed to his father-in-law without consideration, and for the purpose of defrauding his creditors, in violation of the provision of the statute of Elizabeth.

2. That Anthony G. Quervelle having received or claimed the proceeds of sale, as a judgment creditor of Maurice Riatt, as whose property it was sold, he was estopped from denying title in Riatt, and from claiming it to himself.

The main question submitted to the jury was, whether the conveyance was fraudulent as to creditors. Having given in evidence, the sale under the *venditioni exponas*, the plaintiff below offered in evidence the auditor's report, distributing the fund raised by said sale of Riatt's interest, " to show that Quervelle, the landlord of the defendants, claimed part of the fund raised by said sale as a judgment creditor." This was objected to on the part of the said Quervelle, " until it was shown that Riatt had some interest in the property,"—the admission of it by the judge was the subject of the *first* bill of exception.

The plaintiff below then gave in evidence the sheriff's deed for the premises in dispute in this action, sold as hereinbefore stated, acknowledged on the 6th of January, 1849; and offered Isaac C. Jones to prove that he, Jones, sold a farm in New Jersey to Riatt, to be followed by proof that Riatt gave this identical farm to Jonathan B. Grier for the property in dispute. This was objected to on the part of Quervelle, and the admission of it formed the subject of the *second* bill of exceptions.

The plaintiff below then offered in evidence a deed dated 6th May, 1843, from Maurice Riatt and wife to Robert B. Grier, for the farm mentioned in the deed from Jones to Riatt, with an offer to show that this particular farm was given to Grier for the property in dispute in this action. The objection to it and the admission of this deed, proved by a subscribing witness, and then read to the jury, formed the subject of the *third* bill of exceptions.

The plaintiff below then offered in evidence the deposition of Grier, the admission of which, notwithstanding the objection on

[Garrigues *v.* Harris.]

the part of Quervelle, formed the subject of the *fourth* bill of exceptions.

The plaintiff below then offered in evidence a book, alleged to be the book of docket entries, and a paper alleged to be the transcript filed in the office of the Court of Common Pleas of Philadelphia county, which were offered as being the record in the case of Salisbury *v.* Riatt, September Term, 1838, number 100. The objection to their reception on the part of Quervelle was, that there was no certificate by the proper officer that they constituted the whole record, nor were they produced or proved *by the proper officer*, having charge of the records of that court. The same objection applies to the reception of similar papers admitted afterwards by the court, and which form the subject of the 8th, 9th, 10th, 11th, 12th, and 13th bills of exceptions.

The records last referred to, were of judgments entered in the District Court and Common Pleas, Philadelphia, in favor of various creditors *v.* Maurice Riatt, and were offered to show indebtedness in Riatt at the time of his conveyance to Quervelle, the defendant.

The reading of "an abstract of a mortgage, by Weaver to Quervelle, 14th June, 1843," for some land in New Jersey, was offered in evidence. It was objected to on part of defendant, but was admitted.

Verdict was rendered for the plaintiff, Harris.

It was assigned for error:—1. The plaintiffs in error assign "general errors," and the following specific errors, to wit:—2. Because the court permitted the counsel for the plaintiff in the court below to read to the jury the auditor's report of the distribution of the fund in Harris *v.* Riatt, Common Pleas, June, 1843, No. 131. 3. Because the court admitted the testimony of Isaac C. Jones, set forth in the second bill of exceptions, to go to the jury, and also permitted the plaintiff's counsel to read in connexion with it, upon proof by said Jones, the deed of September 8, 1838, Jones and wife to Maurice Riatt, also set forth in the said bill of exceptions. 4. Because the court permitted the plaintiff's counsel to read to the jury the deed from Maurice Riatt to Jonathan B. Grier, set forth in the third bill exceptions. 5. Because the court permitted the whole deposition of Jonathan B. Grier to be read to the jury. 6. Because the court permitted the entries, transcript, and papers offered as the record in Salisbury *v.* Riatt, Common Pleas, September Term, 1838, No. 100, to be read to the jury. 7. Because the court permitted the "certified copy" of the abstract of a mortgage, Daniel J. Weaver to Anthony G. Quervelle, 14th June, 1842, to be read to the jury.

The 8th, 9th, 10th, 11th, 12th, and 13th assignments related to the admission in evidence of docket entries and papers of certain judgments in the District Court and Common Pleas in favor of various creditors against Maurice Riatt.

[Garrigues *v.* Harris.]

The case was argued by *Ingraham*, for Garrigues, the plaintiff in error.—He contended that the auditor's report was not evidence. If Riatt had an interest in the land sold, the report of the auditor did not tend to establish it. 3d, 4th, and 5th assignments: There was no offer to show that Jones had any interest in the land alleged to have been conveyed to Riatt, nor any interest shown to have been in Grier in the premises in dispute, which it was alleged that he gave to Riatt.

Certain parts of Grier's deposition were not evidence. The object was to prove conveyances, encumbrances, and other matters, the evidence of which was in writing; it was not evidence unless it appeared that they were in the possession of the other party, and then notice should have been given to Quervelle to produce them. The declarations also of Quervelle after he had parted with his interest, were given in evidence to contradict his grant. They were not admissible: 1 *Ser. & R.* 526; 9 *Id.* 47–74; 13 *Id.* 107; 5 *W. & Ser.* 427; 1 *Barr* 208.

6th, 8th, and subsequent assignments: The record offered of the case of Salisbury *v.* Riatt, was of a judgment in the *Common Pleas.* It was *not certified* by the officer having charge of it. It has been decided that the bringing in court by the officer of the court of the "judgment book," the record of the judgment-roll not being made up, will not be sufficient: 2 *New Rep.* 474; 1 *Moo. & R.* 236.

The doctrine has been held in the United States that one court can judicially know nothing of the proceedings of *another* court, unless they are properly certified: 3 *Dev. Rep.* 423; 4 *Wash. C. C. Rep.* 698; 12 *Pick.* 568; 13 *Ser. & R.* 135; 1 *Pa. Rep.* 394; 2 *Pa. Law Journal* 303; *Id.* 363. The records were not brought into court by the *proper officer*, and papers so produced are not evidence: 9 *Watts* 317, Devering *v.* Williamson.

As to the 7th assignment: The certified copy of the abstract of the *mortgage* of land in New Jersey was not evidence. It was but a copy of an abstract; no account was given of the original; nor any reason assigned for offering less than the whole mortgage; nor was there any statute shown making such abstract evidence in New Jersey: 11 *Wheaton* 79.

*Dickerson* and *Hirst*, for Harris, defendant in error.—It was alleged that the entire record of the judgment under which Harris purchased and claimed was offered in evidence. The auditor's report was but a part of it. It was offered to show that Quervelle, the defendant below, claimed a part of the fund arising from the sale. He is estopped from claiming the money and the land: 17 *Ser. & R.* 366; 17 *Con.* 345–6; 1 *Rawle* 163; 7 *W. & Ser.* 238.

It was subsequently proved that Querville did not pay anything for the land, but that Riatt had exchanged a Jersey farm for it.

[Garrigues *v.* Harris.]

As to the third assignment: Jones was called to prove that he sold to Riatt the farm in New Jersey. If the evidence was objectionable, the error was removed by the deed from Jones to Riatt, proved by a subscribing witness.

As to the fourth assignment: The deed from Riatt to Grier showed title *in Riatt*, which was denied on the part of the plaintiff.

To the fifth assignment: The deposition of Grier was entirely competent; nor was there any part of his deposition but what was complete, or made so by the production of the deeds and papers referred to by him therein, which cures the objection, if anything were in it.

To the sixth: The records of the Court of Common Pleas were all proved to be the entire record by the clerk who had charge of that department. The prothonotary died but the day or day but one before, and it was therefore impossible to get certified copies of the records. The 5th, 8th, 9th, 10th, 11th, 12th, and 13th bills of exceptions are, therefore, unfounded.

To the seventh: The certificates of the proper officers show, that the mortgage was properly recorded under the laws of the state of New Jersey, and it was legally admitted. The judge has to look to the certificate, which if under the hand and seal of the proper officer, and duly certified under the Act of Congress, the judge trying the cause cannot go behind it; but in this case *it is the entire mortgage,* as will be seen by reference thereto; this exception falls to the ground.

To the eighth and subsequent assignments: The papers from the prothonotary's office of the District Court were the records of the court in which this case was tried, and the judge is presumed to know and have the record before him; and in all cases in which these records were offered, the entire record, and each paper indicated by the docket, were before the court, and examined by the judge, before he permitted them to go in evidence. In the cases in which all the papers could not be found, he rejected the evidence. Vonneida, who brought the papers into court, was one of the officers of the court.

The opinion of the court was delivered April 14, 1852, by

Lewis, J.—This was an action of ejectment, in which the plaintiff below sought to recover upon proof of title in one Maurice Riatt, and a sheriff's sale to the plaintiff of Riatt's interest in the premises. Garrigues was the tenant in possession, and Quervelle, as his landlord, defended the action. It does not appear that Quervelle produced any title; but the evidence given by the plaintiff below shows that the premises had been conveyed to Quervelle; and the cause turned upon the question whether that conveyance was made for the purpose of defrauding the creditors of Riatt. To establish the affirmative of this issue, the plaintiff gave in

2 G

[Garrigues *v.* Harris.]

evidence a deed of the 8th September, 1838, from Jones to Riatt, and another dated the 6th May, 1843, from Riatt to Grier: and the testimony of Jones and Grier was admitted to prove that the title thus conveyed to Grier was the consideration for the conveyance from the latter to Quervelle, of the land in dispute in this action.

In the investigation of a question of fraud, the courts should be liberal in the introduction of evidence tending to disclose the true nature of the transaction; and it matters not how much the parties may have complicated it with dealings apparently conducted in good faith, or how many conveyances to or from strangers may be introduced, for the purpose of covering the fraud from the view of those to be affected by it; the law condemns it, and *justice*, although blind in obedience to the injunction which forbids her to "respect persons in judgment," and commands her to "hear the small as well as the great," proceeds, in her investigations, with a scrutinizing eye that looks under and beyond all contrivances intended to "double hatch the cheat."

It has been repeatedly decided, that the order of time in which evidence may be introduced, is a matter to be regulated by the sound discretion of the court below, and is not the subject of error. It matters not, therefore, that a deed was read in evidence before the proof of execution, when we see that it was afterwards properly proved by the subscribing witness; and we certainly cannot reverse a judgment because the court below was unwilling to disturb the gravity of its proceedings by reading the deed a second time to the jury.

Under the circumstances of this case, it was not a valid objection to this evidence, that the conveyances were "isolated deeds." They were accepted by the party interested as conveying a good title. He received the title thereby conveyed as sufficient consideration for the conveyance which he made of the land in controversy. He makes no complaint against these deeds, and it lies not in the mouth that feeds upon the consideration to repudiate them. They were properly admitted, in connection with the evidence that the title of Quervelle was thus paid for by Maurice Riatt. This fact did not appear upon the face of the deeds themselves, and therefore the testimony of Jones and Grier was properly received as pertinent evidence touching the main question on which the cause depended.

It is true that the deed to Quervelle was not produced; but the evidence justified the inference that it was in his own possession; and the action itself, being a demand of the land which he claimed under that deed, upon the ground of fraud in its concoction, dispensed with the usual preliminary proof of notice to produce it. It would be absurd to suppose that he came to the trial of a cause which he knew involved the validity of that deed, without being prepared with it, if his interests required its production. He held in his own hand the means of guarding against any injury from

[Garrigues *v.* Harris.]

parol evidence of its contents, and has therefore no ground for complaint. But we must bear in mind that the evidence given by the plaintiff touched not so much the *contents* of the deed as the *purpose* for which it was made.

The auditor's report, after confirmation, must be regarded as a proceeding in the court which directed the sheriff's sale of Riatt's title, and was the legal method adopted to distribute the proceeds. That record shows that Quervelle appeared and claimed a portion of the money under a judgment which he held against Riatt. Although this act might not estop him from setting up a title to himself, it was certainly an admission that Riatt had *some* interest in the land which might be bound by the lien of a judgment. It matters not that the auditor decided against his claim, on the ground that the lien had expired by lapse of time. Neither failure nor success in the enterprise could change the character of admissions necessarily involved in asserting the claim. The case of Martin *et al. v.* Ives *et al.* 17 *Ser. & R.* 366, is an instance in which a party was estopped from impeaching an erroneous judgment by an affirmation of its validity, made to effect an object in which he was not successful.

We have in this case a great number of exceptions to the records of judgments against Riatt. These judgments were given in evidence to prove the indebtedness of Riatt at the time of the conveyance to Quervelle. Some of these were judgments in the District Court, and others were judgments entered in the Common Pleas. The records of the Common Pleas were produced from the proper office, and proved by the clerk who had charge of them, (the prothonotary himself having died the day before); and the records of the same court that was engaged in the trial of the cause were brought into court by a tipstaff, but admitted in the bills of exceptions to be the records of the court.

The removal of records from their proper place is not to be commended, because it is a practice productive of inconvenience to individuals having an interest in them, and whose rights may be greatly endangered by the exposure to risks which attend their transportation from place to place. But we are to decide a question of evidence, not of official duty or public convenience. In many cases, where the record of the same court is the *gist* of the action, and its existence is *directly* put in issue by the plea, the original record, being always accessible to the court which has it in its own custody, is regarded as the *best evidence*. If so regarded, when directly in issue, it is surely competent evidence to prove a collateral fact incidentally involved in the trial of a cause. These records were properly received in evidence. It was sufficient that those brought from the Common Pleas were produced from the proper office and proved by the clerk who had the custody of them there. And the records of the District Court

required no proof, as they were admitted in the bills of exceptions to be the records of that court.  It was therefore quite an immaterial consideration that they were brought into the court room by a tipstaff.

The "*abstract*" of the mortgage of the 14th June, 1842, from Weaver to Quervelle, recited that the mortgaged premises were the same *that Maurice Riatt had on that day conveyed to Weaver*. It might have been followed by evidence tending to show that it was given for the purchase-money of land that day sold by Riatt to Weaver, and tending also to show that the parties charged with the fraud were engaged in a systematic course of dealing, by which the titles and securities of Riatt were taken in the name of Quervelle.  If it formed a link in the chain of evidence *to* establish this course of dealing between the parties, it was pertinent to the issue; and this court will not presume that the court below admitted irrelevant evidence.  On the contrary, the presumption is in favor of the action of that court, and the party seeking to reverse its decisions must show affirmatively and clearly that a substantial error has been committed.

But it is objected that only an "*abstract*" of the mortgage was recorded, and that a copy of that record was not evidence, because it did not contain all the words that were in the original instrument.   The land bound by the mortgage is situate in New Jersey, and the instrument was necessarily recorded there.   The party who offered in evidence the copy of that record, claims a right under the Constitution of the United States and an Act of Congress.  If the claim be denied by this court, the decision is subject to review in the supreme judicial tribunal of the federal government, where the states are not regarded as *foreign* states, and where the question must be decided as a question of *domestic*, not *foreign* law.   On questions of this character, the state courts are bound by the rule of decision that governs the tribunal of review. The Act of Congress of 27th March, 1804, gives to this office-copy the effect it would have in the courts of New Jersey, and necessarily draws into cognisance here, as a question of *domestic* law under our common government, the laws and usages of that state: Baxley *v.* Linah, 4 *Harris* 241.   We are required to take judicial notice that the recording of an "*abstract*" of a mortgage is all that is there enjoined, and that a certified copy of that record is competent evidence in that state.   It is therefore competent evidence here, when authenticated, as this document was, according to the Act of Congress.

We see no error in the proceedings of the court below.

Judgment affirmed.